Argued and submitted June 9, 2011, reversed and remanded July 25, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM DELRAY TOLAND,
*Defendant-Appellant.*

Marion County Circuit Court
07C51659; A141030 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LARRY ALAN FRICANO,
*Defendant-Appellant.*

Marion County Circuit Court
07C51658; A141047

283 P3d 930

Celia Howes argued the cause for appellants. With her on the brief were Whitney P. Boise and Hoevet, Boise & Olson, P.C.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

**ORTEGA, P. J.**

After defendants entered conditional no-contest pleas to one count each of hindering prosecution, ORS 162.325, the trial court entered judgments convicting them of that offense. On appeal, defendants seek reversal of those convictions, asserting that the trial court erred in a pretrial ruling that precluded them from relying on federal confidentiality regulations as a "complete defense" to the hindering prosecution charges against them. *See, e.g.*, 42 CFR §§ 2.12, 2.13(c), 2.20. For the reasons explained below, we reverse and remand.

For context, we begin with a brief overview of the federal confidentiality regulations at issue. Under federal law, "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function" are confidential, except as authorized by statute. 42 USC § 290dd-2. Restrictions on disclosure apply to any information, whether or not recorded, that "[w]ould identify a patient as an alcohol or drug abuser either directly, by reference to other publicly available information, or through verification of such identification by another person." 42 CFR § 2.12(a)(1). Those confidentiality rules govern the ability of a drug or alcohol treatment program's employees to even acknowledge the presence of an identified patient in a facility:

> "The presence of an identified patient in a facility or component of a facility which is publicly identified as a place where only alcohol or drug abuse diagnosis, treatment, or referral is provided may be acknowledged only if the patient's written consent is obtained in accordance with subpart C of these regulations or if an authorizing court order is entered in accordance with subpart E of these regulations. The regulations permit acknowledgement of the presence of an identified patient in a facility or part of a facility if the facility is not publicly identified as only an alcohol or drug abuse diagnosis, treatment or referral facility, and if the acknowledgement does not reveal that the patient is an alcohol or drug abuser."

42 CFR § 2.13(c)(1). The restrictions on disclosure provided in the regulations "apply whether the holder of the information believes that the person seeking the information already has

it, has other means of obtaining it, is a law enforcement or other official, has obtained a subpoena, or asserts any other justification for disclosure or use which is not permitted" under the regulations. 42 CFR § 2.13(b). Furthermore, "no State law may either authorize or compel any disclosure" that is prohibited by the federal regulations. 42 CFR § 2.20.

For purposes of this appeal, the underlying facts are undisputed except as indicated. Cascadia Behavioral Health Care is a nonprofit corporation that offers treatment services for mental health and addictions. In Marion County, the company does business under the name Bridgeway. There are four Bridgeway offices in the county—two in Salem, one in Stayton, and one in Woodburn. The incident at issue took place at the Bridgeway office located on 25th Street SE in Salem (the 25th Street office). The 25th Street office provides only alcohol and drug abuse treatment and defendants are drug and alcohol counselors at that office.

K. K., who was on post-prison supervision, was referred by his parole officer to Bridgeway for a drug and alcohol evaluation. He signed a consent form allowing his alcohol and drug diagnosis, treatment, and prognosis information to be provided to the Marion County parole and probation office. After the drug and alcohol evaluation, K. K. attended a treatment program at the 25th Street office.

In September 2007, a parole officer asked officers with the Salem Police Department to arrest K. K. for a violation of his parole. After failing to locate him at his residence, the police officers were informed by the parole officer that K. K. "was just down the street at Bridgeway, currently, and that [the parole officer] was in contact with a member within that agency and that we could go down there and contact [K. K.] and take him in * * * custody." The officers proceeded to the 25th Street office, where they spoke to the receptionist and asked for K. K. The receptionist responded that, for confidentiality reasons, she could not tell the officers whether K. K. was present. However, from the reception area, one officer observed that K. K. was present and saw defendant Toland and K. K. enter a room in the treatment area. Later, an officer observed defendant Fricano join K. K. and Toland.

After waiting approximately 15 minutes for K. K., an officer knocked on the front door to the treatment area and received no response. Later, after a total of about 30 minutes, the officer kicked the door several times and announced that it was the police department. He again received no response. The officer then found that the door was unlocked and entered the treatment area, where he found K. K. with Fricano standing next to him. Officers took K. K. into custody. Defendants later were charged with hindering prosecution pursuant to ORS 162.325.[1]

In a pretrial memorandum, defendant Toland asserted that, because Bridgeway is a drug and alcohol treatment program, it and its employees are required to comply with federal confidentiality laws that prohibit disclosures of information that would identify a patient as an alcohol or drug abuser. On the basis of those confidentiality laws, he contended that defendants could not be found guilty of hindering prosecution if they were merely complying with federal law. The state responded by filing a motion *in limine* in which it urged the court to prevent defendants "from using or mentioning any defense which relies in whole or in part on 42 CFR Part 2." Relying on 42 CFR § 2.13(c)(1), the state asserted that defendants were permitted to acknowledge K. K.'s presence in response to the police officers' request because "Bridgeway is not identified to the public as being only an alcohol or drug abuse diagnosis, treatment or referral facility." Defendants responded that, contrary to

---

[1] Pursuant to ORS 162.325,

"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:

"(a) Harbors or conceals such person; or

"(b) Warns such person of impending discovery or apprehension; or

"(c) Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or

"(d) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or

"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or

"(f) Aids such person in securing or protecting the proceeds of the crime."

the state's position, the federal regulations prohibited their acknowledgement of K. K. at the 25th Street office and that their compliance with federal law was a complete defense to the charge of hindering prosecution. Furthermore, citing *State v. Brown*, 306 Or 599, 761 P2d 1300 (1988), and *State v. Shelley*, 110 Or App 225, 821 P2d 1111 (1991), they contended that the court must allow them to present their defense if there was any evidence to support it. Specifically, it was defendants' position that they must be permitted to introduce evidence relating to federal confidentiality law both to the extent that their compliance with the law would constitute a complete defense to the charges and "to the extent that their understanding of the laws tends to disprove that they intended to harbor or conceal K. K."

In December 2008, the court held a hearing to consider whether defendants could present their defense based on the federal regulations. It was undisputed that the 25th Street office actually provided only drug and alcohol treatment; the evidence at the hearing focused on the manner in which Bridgeway as a whole and the 25th Street office in particular held themselves out to the public. *See* 42 CFR § 2.13(c)(1) (acknowledgement of the presence of an identified patient in a facility or component of a facility publicly identified as a place where only alcohol and drug abuse diagnosis or treatment is provided is prohibited except under certain listed circumstances; if the facility is not publicly identified as only an alcohol or drug abuse diagnosis or treatment facility, a patient can be acknowledged if acknowledgement does not reveal that the patient is an alcohol or drug abuser).

Two parole and probation officers testified. The first, Benitz, testified that she had not visited the 25th Street office, but that she had toured Bridgeway's other Salem office (the Harold Drive office) and, during that tour, was told about Bridgeway's "detoxification services, as well as [their] gambling addiction program." Furthermore, she noted a community service guide that listed "Bridgeway-Cascadia Behavorial Health Care" and described the Harold Drive office as providing gambling treatment as well as drug and alcohol treatment. Webb, the other parole and probation officer who testified, also stated that she had visited the Harold Drive office but not the 25th Street office.

She testified that she was not aware of what services were provided at any particular Bridgeway location, including the 25th Street office, but was aware that the agency generally provided gambling and drug and alcohol treatment. An officer with the Salem Police Department, Bennett, testified that he visited the 25th Street office and did not observe signs visible from the road that would identify it. He asked the receptionist at the 25th Street office "if this was an * * * establishment" where someone with a gambling problem could get help; she responded affirmatively and directed him to the Harold Drive office. The state also offered Internet search listings and yellow page advertisements listing Bridgeway generally as providing drug and alcohol, gambling, and mental health treatment. The chief clinical officer for Cascadia testified that the 25th Street office has a license, available to the public, which restricts the services offered there to alcohol and drug services. Furthermore, she stated that nothing on the only website that the company maintains says "that the 25th [Street office] has anything to do with gambling treatment."

At the close of the hearing, the state asserted that defendants could have acknowledged K. K.'s presence at the 25th Street office because the "facility is not publicly identified as only an alcohol or drug abuse diagnosis, treatment, or referral facility." The state asserted that the "facility" for purposes of the federal regulations was Bridgeway as a whole, not the 25th Street office, and it relied on that understanding of "facility" to support its argument. Defendants argued that the 25th Street office was a facility of a greater agency and was, therefore, subject to the obligations of the confidentiality law. The court determined that "Bridge/Cascadia mixed its message to the public" and held itself out as providing more than drug and alcohol treatment. Accordingly, the court concluded that defendants could not rely on the federal confidentiality regulations as a complete defense to the hindering prosecution charges. However, it left the door open for defendants to present information relating to the effect of the federal confidentiality regulations on their mental state.

After the hearing, pursuant to plea agreements, defendants each entered a conditional no-contest plea to misdemeanor hindering prosecution. As part of the pleas,

defendants reserved the right to appeal the trial court's pretrial ruling on the motion *in limine* with respect to the federal confidentiality regulations. *See* ORS 135.335(3) ("With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest plea reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion.").

On appeal, defendants assert that the trial court erred in granting the state's motion. In particular, they contend that the court improperly concluded that the federal regulations permitted them to acknowledge K. K.'s presence, that the court erred in concluding that the "facility" was not publicly identified as providing only alcohol or drug abuse treatment, and in determining that acknowledgement of K. K. would not have confirmed him as an alcohol or drug abuser.

In response, the state contends that the trial court could not properly decide in the context of a pretrial motion whether or not defendants would be permitted to raise their defense. Furthermore, according to the state, because defendants entered conditional pleas following the court's ruling rather than proceeding to trial, they cannot challenge the merits of the court's ruling on appeal. In addition, the state argues that, even if this court could reach the merits of defendants' arguments, the trial court's ruling was correct. We disagree with the state on all of those points.

As a general matter, a defendant is entitled to have a defense submitted to the jury if there are any facts to support it. *Brown*, 306 Or at 604 (the jury's role as factfinder dictates that it should be permitted to consider any theory for which the record contains some evidence); *Shelley*, 110 Or App at 228 ("When a defendant asserts a defense to a charge, he is entitled to have his theory of the case presented to the jury, if there is any evidence from which the jurors could infer the required elements of the defense are present."). Although the state relies on this court's opinion in *State v. Cervantes*, 232 Or App 567, 223 P3d 425 (2009), to support its assertion that we cannot consider defendants' arguments on appeal, that case does not dictate the result here.

In *Cervantes*, the parties, "both in the trial court and on appeal, * * * urged the courts to address, by way

of a demurrer, an issue that is not properly subject to a demurrer" by statute but to consider information contained outside the indictment. 232 Or App at 576; *see* ORS 135.360 (in considering whether to sustain a demurrer, the court may consider only the information contained in the indictment). We explained:

> "The parties agreed in the trial court below with the trial court's erroneous conclusion that the [factually based] arguments the parties were making were cognizable in the context of a demurrer, and they incorrectly assert on appeal that this court should affirm or reverse a trial court decision on the merits of a demurrer that the court should never have considered. In this particular circumstance, neither party is in the position to obtain a reversal on appeal."

*Cervantes*, 232 Or App at 576.

The context in which this case arises is different. The trial court considered whether defendants would be permitted to present their defense based on the state's motion *in limine* to preclude them from presenting evidence of that defense. It is not clear from the record that the parties agreed that the trial court should consider that issue pretrial—indeed, defendants responded to the motion by asserting, in part, that they were entitled to present their defense to the jury. The state received a favorable ruling on the motion it filed; defendants were precluded from relying on the federal regulations as a complete defense to the charges and, accordingly, from presenting evidence that related only to that complete defense. Furthermore, in contrast to the consideration of factual allegations in the context of a demurrer, a court is permitted to consider facts in the context of the state's pretrial motion *in limine* seeking to limit a defendant's ability to present evidence of a particular defense at trial. *See State v. Clowes*, 310 Or 686, 801 P2d 789 (1990) (in a case where the state filed a pretrial motion *in limine* to exclude evidence of a particular defense, the court could properly consider that issue in the context of a pretrial offer of proof). Under the circumstances of this case, we reject the state's contention that we cannot consider the merits of defendants' arguments on appeal.[2]

---

[2] We do not intend to suggest that the procedure used by the trial court in this case was legally proper. However, defendants have not assigned error to the procedural method that the trial court employed in considering the issues raised by

Because it is dispositive, we turn to defendants' assertion that, for purposes of the federal regulations, the "facility" is "the specific site at issue and not the agency as a whole." Defendants accordingly contend that the 25th Street office is the "facility" at issue in this case and that, therefore, "[i]t is of no consequence that Cascadia and other Bridgeway/Cascadia locations promote themselves as providing and provide services other than alcohol and drug abuse treatment." The state does not appear to dispute defendant's legal assertion regarding the meaning of the term "facility," and we agree that the text and context of the regulation are clear and that, in this case, the "facility" in question is the 25th Street office.

As noted, pursuant to 42 CFR section 2.13(c)(1), "[t]he presence of an identified patient in a facility or component of a facility which is publicly identified as a place where only alcohol or drug abuse diagnosis, treatment, or referral is provided may be acknowledged" only under certain circumstances not relevant here. However, the presence of an identified patient may be acknowledged "in a facility or part of a facility if the facility is not publicly identified as only an alcohol or drug abuse diagnosis, treatment or referral facility, and if the acknowledgement does not reveal that the patient is an alcohol or drug abuser." *Id.*

The term "facility" is not specifically defined in the regulations. However, the plain meaning of the term is "something * * * that is built, constructed, [or] installed * * * to perform some particular function." *Webster's Third New International Dictionary* 812-13 (unabridged ed 2002). Thus, an office built to serve as a drug or alcohol treatment center would constitute a "facility." Furthermore, the underlying purpose of the federal confidentiality laws supports defendants' reading of the term "facility." One goal of the federal confidentiality laws is to "shield the drug addict from public scrutiny while the addict seeks treatment." *United States v. Johnston*, 810 F2d 841, 842 (8th Cir 1987). The regulations at issue are intended to further

---

the state's motion. *See* ORAP 5.45(1) ("A question or issue to be decided on appeal shall be raised in the form of an assignment of error[.]"). Under the circumstances presented here, unlike *Cervantes*, it is proper for us to review at least a portion of the trial court's ruling on the merits.

that end—that is, to protect the identity of patients. Thus, where disclosure of a patient's presence at a particular location would reveal that the patient is in alcohol or drug treatment, that disclosure generally is not permitted. In circumstances where a particular location or office has been, by some means, publicly identified as providing only drug- and alcohol-related services, mere acknowledgement of a patient at that location or office would, in turn, reveal that the person is a drug or alcohol abuser. The fact that the office or particular location is part of a larger organization or agency, which provides other services in addition to drug and alcohol treatment, does not alter that conclusion. Hence, in our view, the regulations' restriction on the disclosure of a patient's presence relates to the way in which the particular office at issue (as opposed to the agency as a whole) has been identified to the public.[3]

In sum, we agree with defendants that the term "facility" as used in the regulations at issue refers to the particular office in question rather than to the agency or company as a whole. However, in reaching its decision on the state's motion to limit evidence regarding defendants' proposed defense, it is not clear that the trial court used that definition of the term. Rather, it appears to have considered the manner in which "Bridgeway/Cascadia, or Cascadia/Bridgeway, represented themselves to the public." Nonetheless, the state asserts that defendants' legal argument regarding the definition of "facility" does not assist them because, "even assuming defendants' reading of the term 'facility' to include only [the 25th Street] office is correct, there was * * * no evidence that that office held itself

---

[3] We note, parenthetically, that as defendants point out, that understanding is consistent with the manner in which the term "facility" is used in the Oregon Administrative Rules governing approval and licensure of drug and alcohol abuse programs. Under those rules, "[f]acilities [r]equiring [a] [l]icense" are "[a]ny facility which meets the definition of a residential treatment facility for alcohol and drug-dependent persons under ORS 443.400 or a detoxification center as defined in ORS 430.306[.]" OAR 415-012-0020(3). Each location in which a treatment provider will operate must separately apply for its own license, and that application must include a "[f]loor plan for the proposed facility." OAR 415-012-0030(3), (6)(n). Furthermore, the license is specific to the premises upon which the treatment program is to be operated and cannot be transferred to "any other location." OAR 415-012-0040(8).

out as exclusively a drug and alcohol treatment facility." We disagree.

Initially, we note that the operative inquiry under the regulations is whether the facility was "publicly identified" as providing only alcohol and drug abuse diagnosis, treatment, or referral. Furthermore, contrary to the state's assertion, there was some evidence to support defendants' position that the 25th Street office was publicly identified as only providing drug- and alcohol-related services. Cascadia's chief clinical officer testified that only drug and alcohol services were provided at the 25th Street location and that the facility's permit, which was generally available to the public, restricted the services offered at that office to drug and alcohol treatment. Accordingly, because defendants offered evidence in support of their defense under the regulations, the trial court erred in precluding them from presenting that defense. Thus, the judgment of conviction must be reversed and the case remanded.

Reversed and remanded.