Argued and submitted September 30, 2013, conviction for first-degree disorderly conduct reversed; otherwise affirmed December 17, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEITH URIAH NELSON,
aka Keith Nelson,
*Defendant-Appellant.*

Multnomah County Circuit Court
091154105; A146904

341 P3d 787

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Anna M. Joyce, Solicitor General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Matthew J. Lysne, Assistant Attorney General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.*

SCHUMAN, S. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

## SCHUMAN, S. J.

Defendant was convicted of first-degree disorderly conduct, ORS 166.023(1), for (in the words of the charging instrument) "knowingly creat[ing] a risk of public inconvenience, annoyance and alarm by initiating and circulating a report concerning an impending catastrophe, * * * knowing the report to be false and stating that the catastrophe and emergency was located in and upon a school."[1] The charge stemmed from messages that defendant, a former student at Sam Barlow High School in Gresham, exchanged on MySpace, a social networking website, with another former Barlow student. A third student saw the messages and reported them to the police, who then reported them to the school. At the close of the state's case, defendant moved for a judgment of acquittal (MJOA) on the grounds that the state did not present evidence that defendant's conduct amounted to knowingly initiating and circulating a report of an impending catastrophe at a school, knowing that report to be false; and that, in any event, the charging instrument, on its face, criminalized speech that was protected by the guarantees of Article I, section 8, of the Oregon Constitution, as well as the First Amendment to the United States Constitution. The trial court denied the MJOA. After the jury returned a verdict of guilty, defendant renewed his arguments in a motion in arrest of judgment (MAJ), which the court also denied. Defendant appeals, and we reverse.

A preliminary observation controls our treatment of the issues presented by this case. At trial, as noted, defendant raised both a subconstitutional and a constitutional issue. Both were argued, and the trial court resolved both in favor of the state. On appeal, however, defendant does not include the trial court's resolution of the statutory question

---

[1] ORS 166.023 provides, in part:

"(1) A person commits the crime of disorderly conduct in the first degree if, with intent to cause public inconvenience, annoyance or alarm, or knowingly creating a risk thereof, the person initiates or circulates a report, knowing it to be false:

"(a) Concerning an alleged hazardous substance or an alleged or impending fire, explosion, catastrophe or other emergency; and

"(b) Stating that the hazardous substance, fire, explosion, catastrophe or other emergency is located in or upon a school as defined in ORS 339.315."

in his assignment of error, nor does the state mention it; in other words, the case as presented to us involves a question of constitutional law only. Typically, we will not review a trial court ruling that is not assigned as error. *See* ORAP 5.45(1) ("Assignments of error are required in all opening briefs of appellants and cross-appellants."); *State v. Toland / Fricano*, 251 Or App 395, 403 n 2, 283 P3d 930 (2012) (declining to address issue because it was not assigned as error). However, we follow a different practice when we might resolve a case on either constitutional or subconstitutional grounds but the parties raise only constitutional issues. In such cases, we will not review the constitutional question unless we have resolved the subconstitutional question and that resolution does not end the inquiry. *See Leo v. Keisling*, 327 Or 556, 562, 964 P2d 1023 (1998) ("[T]he parties present the single, constitutional question * * *. However, it is well established that this court ordinarily does not decide constitutional issues if there is an adequate subconstitutional basis for decision."); *Li v. State of Oregon*, 338 Or 376, 391, 110 P3d 91 (2005). We therefore begin by addressing the subconstitutional issue, despite the fact that defendant does not argue the point on appeal.

We review the denial of an MJOA to determine whether, after viewing the facts and the inferences that can reasonably be drawn from them in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). The relevant facts under that standard are few and undisputed. Defendant and a friend, Varsamas, had accounts on MySpace.[2] Defendant's account was "private," meaning that only defendant's specified "friends" had access to it. Varsamas's account, and messages that appeared on it, were public. The interchange that became the subject of this case began when Varsamas, using his MySpace alias ("The New Naruto"), posted on his MySpace page the following: "I live down the street from Barlow [High School]. I'm bored let's shoot it up. Who's

---

[2] Varsamas and defendant were codefendants at trial and both were convicted of first-degree disorderly conduct. Varsamas is not a party to this appeal.

with me on it? Oh and if you got plans let me hear them ***. Mood: MASSACRE." Several people, including "Katy," "Derek," and defendant (using his MySpace alias, "anatomy of sin"), responded. This conversation, transcribed almost verbatim, ensued:

> "Defendant:   im in, iv got some knives and I can get my dads 22 cal, we can start by killing [the campus security officer and an assistant principal].

> "Varsamas:   Fuck yeah bro. Should we kill of the teachers or the students first?

> "Defendant:   ummm lets go for the teachers sence there older wiser and stuff they wont freak out as bad as the kids would.

> "Varsamas:   We should try it all sneaky like. Like slit their throats and shit like that. Oh or even choke them and watch the live drift out of them.

> "Defendant:   but then we wont be abel to kill as many ppl it will take to long. If we go in all head strong blasting ppl in the face are score will be hire then we kill are selfs so the family will never get justice/peace

> "Katy:   Probably shouldn't be saying that, someone could take you seriously. Lol. Also, teach your friend to spell. He or she needs anatomy of spelling. Ha!

> "Varsamas:   Hmm, you got a point, then we will need more guns. We should probably kill the cop asap. dont want anyone shootin us too.

> "Derek:   can you give me a reason for the killing time?

> "Varsamas:   to cleanse the gene pool of idiocy

> "Katy:   [Addresses defendant as "Anatomy of a spelling lesson" and corrects several spelling errors.]

> "Defendant:   lmao that cop was a prick anyway XD id love to kill him, one of my co-workers today said we should hold ppl at gun point and rape them *** any way so what's the date and time for us to do this?"

That is the entire conversation contained in the record. Sometime afterward, Katy reported the conversation to the police, who, in turn, reported it to the school. Defendant was subsequently interviewed by police, arrested, and tried for

disorderly conduct.[3] As noted above, he raised both a constitutional issue (prosecuting him under the charging instrument violated his state and federal free expression rights) and a statutory issue (his undisputed speech activities did not amount to knowingly creating a risk of public inconvenience, annoyance, and alarm by initiating and circulating a report of an impending catastrophe in a school). The court rejected both arguments. In rejecting the statutory argument, the court stated, "making postings on a MySpace page that is later reported to the police by a person who is—has access to those MySpace comments, in my mind, could, at least arguably, constitute initiation or circulation of a report." The trial court, in other words, ruled that the report that created the specified risk was Katy's report to the police, and that defendant's postings "initiated" that report.

With respect, and recognizing that the trial court, unlike this court, did not enjoy the luxury of extended deliberation and discussion, we reach a different conclusion for two reasons.[4] First, to find defendant guilty, the court would have to have found that defendant knowingly initiated and circulated the report. There is no evidence that he did either. If anybody initiated the chain of events that resulted in Katy's report, it was Varsamas. His post, not defendant's, started the online conversation. Nor did defendant circulate the report; the allegedly culpable conduct occurred entirely *before* the report was made. Second, one element of the crime as charged is the culpable mental state of "knowingly." To obtain a conviction, the state had to prove that, when defendant made the relevant statements, he knew that he was "creat[ing] a risk of public inconvenience, annoyance and alarm." Again, there is *no* evidence to support that inference. In fact, the evidence points to the opposite conclusion. Defendant and Katy were not acquainted with each other. Her participation in the conversation consisted of mocking defendant's spelling and cautioning him and Varsamas that somebody could take them seriously—an observation

---

[3] Defendant was also tried for, and acquitted of, three counts of harassment.

[4] The trial court did observe that the state was "attempting to stretch" the meaning of the words in the statute, and that the question of whether the statute applied to defendant's speech was "a close one."

accompanied by a clear indication that she did not: "Probably shouldn't be saying that, someone could take you seriously. Lol."[5] Although a reasonable juror could conclude beyond a reasonable doubt that Katy's report would cause the risk of public inconvenience, annoyance and alarm, no reasonable juror could find, on the evidence in the record and inferences drawn from it, that defendant knew that Katy would make that report.

It is also possible that the "report" in question was not Katy's call to the police, but the conversation between the MySpace participants themselves. Where, as here, there is no indication that the word is used in a technical legal sense, the term is not defined by statute, and there is no helpful legislative history, we look to the word's plain, ordinary meaning. *See State v. Briney*, 345 Or 505, 511, 200 P3d 550 (2008) (court gives words of common usage their plain, ordinary meaning). *Webster's Third New Int'l Dictionary* 1925 (unabridged ed 2002) defines a "report" as, among other things: "common talk or an account spread by common talk : a story or statement casually repeated and generally believed : rumor." It is therefore plausible that the state's theory was that defendant's contributions to the MySpace conversation initiated and circulated the rumor that there was an impending catastrophe at the school. That theory shares the same flaws as the one presuming that the report in question is Katy's. First, there is no evidence to support the inference that defendant, who was charged with initiating *and* circulating the rumor, in fact initiated it. His codefendant did. Second, there is no evidence to support the inference that defendant knew that his contribution to the conversation would ultimately move beyond the conversation itself so as to cause the specified risks. In short, the state did not adduce sufficient evidence to support a conviction. The court should have granted defendant's MJOA. We therefore reverse.

Conviction for first-degree disorderly conduct reversed; otherwise affirmed.

---

[5] Katy testified, and everybody who might appear on MySpace or Facebook knows, that "lol" is an abbreviation of "laughing out loud."