Argued and submitted September 23, reversed and remanded
December 18, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRACY LYNN ROGERS,
*Defendant-Appellant.*

Harney County Circuit Court
17CR56209; A167425

457 P3d 363

Defendant was convicted of harassment, ORS 166.065(1)(c), for writing a Facebook post in which she threatened to kill her supervisor at work. The post, although posted only to defendant's Facebook friends and not viewed by the supervisor on Facebook, was ultimately forwarded to the supervisor by other persons who had taken "screenshots" of the post and forwarded them by text message. The state alleged that, in writing the post, defendant intentionally subjected her supervisor to alarm by conveying an electronic threat to commit a felony involving her supervisor. Defendant assigns error to the trial court's denial of her motion for judgment of acquittal, arguing that the state failed to present sufficient evidence of defendant's intent to convey a threat to her supervisor. *Held*: The trial court erred when it denied defendant's motion. Because the state failed to present legally sufficient evidence of defendant's intent in writing the Facebook post, the Court of Appeals concluded that no rational factfinder could find that the state proved that defendant intended to subject her supervisor to alarm by conveying a threat to commit a felony involving her supervisor's person.

Reversed and remanded.

W. D. Cramer, Jr., Judge.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Keith L. Kutler, Assistant Attorney General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of conviction for harassment, ORS 166.065(1)(c), assigning error to the trial court's denial of her motion for judgment of acquittal. Because the state failed to present legally sufficient evidence that defendant acted with the requisite intent, we conclude that the court erred in denying defendant's motion. Accordingly, we reverse and remand.

In reviewing the denial of a motion for judgment of acquittal, "we view the facts and reasonable attendant inferences in the light most favorable to the state." *State v. Tilly*, 269 Or App 665, 667, 346 P3d 567, *rev den*, 357 Or 640 (2015). We state the following facts in accordance with that standard. Defendant worked at a Safeway store, as did K, the assistant store director and defendant's supervisor. On July 30, 2017, defendant posted to her Facebook account, viewable only by her Facebook friends. In the post, she wrote, "That box cutter I'm gonna put to good use tomorrow!!! Watch out [K]!" Thereafter, defendant made statements in "comments" beneath the original post, including "I will cut your throat!!," "I'm gonna kill you!!," "I'm going to prison," and "I will slice her throat [tomorrow]." Defendant referred to K by name once, in the original post, but she referred to K by her first name only.

That night, "numerous people [who] were concerned about the context of the post" sent K "screenshots" of defendant's Facebook post via text messages. Because K did not have a Facebook account or use social media, she did not observe the posts directly through Facebook. After receiving the screenshots, K called the police. The following morning, Chief Delange of the Hines Police Department learned of the post when screenshots were forwarded to him by a Hines Police Department detective. Delange was "friends" with defendant on Facebook. Because Delange was friends with defendant, he was able to view the post directly through the Facebook application on his cell phone. After viewing the posts, Delange contacted defendant at the Safeway where she and K worked. During Delange's conversation with defendant, she acknowledged that she had written the post,

but told Delange that, although she was "upset with her boss," she "wouldn't actually kill [K]."

Ultimately, defendant was charged with harassment under ORS 166.065(1), which provides, in part:

"A person commits the crime of harassment if the person intentionally:

"* * * * *

"(c)  Subjects another to alarm by conveying a telephonic, electronic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm."

Defendant elected to be tried by the court. At the close of the state's case in chief, defendant moved for a judgment of acquittal, arguing that the state had presented insufficient evidence that defendant had intentionally conveyed a threat to K. The trial court denied defendant's motion, finding that the state had presented sufficient evidence to support a determination that defendant had conveyed an electronic threat to K, and that defendant did so intentionally. The court explained that "the very nature of something like a social networking website like Facebook is to communicate with a large group of people" and "to communicate back to the object of the communication." According to the court, the statute contemplated indirect forms of communication because "everybody understands that if there's a threat to somebody, they're going to communicate, 'Hey, so and so has made this threat to you.'" The court analogized to another indirect form of communication, noting that, if defendant had "told the threat to [K's] husband," then "certainly [defendant would be] intending the threat to get to [K]." After the trial, the court convicted defendant of harassment.

On appeal, defendant assigns error to the trial court's denial of her motion for judgment of acquittal. She makes two arguments with respect to the court's alleged error. First, defendant argues that the state failed to present sufficient evidence from which a factfinder could reasonably conclude that defendant conveyed a threat to K.

In making that argument, defendant asks that we adopt a narrow interpretation of "convey" within ORS 166.065(1)(c) that excludes indirect communication between defendants and victims. Second, defendant argues that the state did not present sufficient evidence that defendant intentionally conveyed the threat to K or caused K alarm. Defendant does not contend that the post itself did not constitute an "electronic threat" under the statute, and we, therefore, do not address that issue.

In response, the state asserts that, from the evidence presented at trial, a reasonable trier of fact could conclude that defendant conveyed a threat of serious physical injury to K, and that defendant did so intentionally. With respect to the meaning of "convey" within ORS 166.065 (1)(c), the state argues that the plain meaning of that term includes indirect communication through intermediaries.[1]

To determine whether a trial court erred in denying a motion for judgment of acquittal, we view "the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the elements of the crimes in question beyond a reasonable doubt." *State v. Reed*, 339 Or 239, 243, 118 P3d 791 (2005). In this case, we must determine whether there was legally sufficient evidence from which a rational factfinder could find that defendant's Facebook post conveyed the threat therein to K, and, if so, whether there was legally sufficient evidence from which that factfinder could find that defendant conveyed that threat intentionally.

We begin our analysis by identifying the elements of harassment in accordance with the facts of this case. In the charging instrument, the state alleged that defendant committed harassment by "intentionally subject[ing] [K] to alarm by conveying an electronic threat to commit a felony involving the person of [K] which threat could have reasonably been expected to cause alarm." The state was required to prove the following elements at trial beyond a reasonable doubt: (1) defendant intended to subject K to alarm by

---

[1] The state also argues that defendant failed to preserve her argument regarding the meaning of "convey." We disagree and conclude that defendant preserved her arguments at trial as required by ORAP 5.45(1).

conveying an electronic threat to commit a felony involving K's person; (2) defendant conveyed the threat; (3) K was actually alarmed by the threat; and (4) K's alarm was objectively reasonable. *See State v. Moyle*, 299 Or 691, 698, 705 P2d 740 (1985) (describing the elements of *former* ORS 166.065(1)(d) (1981), *renumbered as* ORS 166.065(1)(c) (1987)).

We need not address defendant's first argument regarding the meaning of "convey," because, regardless of whether defendant is correct that it requires direct communication between the defendant and the victim, we conclude that the state presented insufficient evidence that defendant intended to convey a threat to K, either directly or indirectly.

"Intentionally" means that "a person acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7). Accordingly, a jury could convict defendant of harassment only if the state presented sufficient evidence from which a rational factfinder could find that defendant, in writing the Facebook post, acted with a conscious objective to convey the threatening statement therein to K.

In establishing an element of a crime, "the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence." *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004). If the established facts "support multiple reasonable inferences," then "which inference to draw is for the jury to decide." *Id*. at 467. But "[w]hether particular circumstantial evidence is sufficient to support a particular inference" is a "legal question for a court to decide." *Id*.

In making that determination, the court must distinguish between permissible inferences that may be drawn from circumstantial evidence and mere speculation. *Id*. at 467. Evidence is insufficient to support a particular inference if it requires "too great an inferential leap" or "the stacking of inferences to the point of speculation." *Id*. at 468. The question is "whether the factfinder reasonably could infer that a particular fact flows from the other proven facts, not whether the inference necessarily flows." *State v. Hedgpeth*,

365 Or 724, 733, 452 P3d 948 (2019). The difference between a reasonable inference and impermissible speculation "is not always easy to describe with precision." *State v. Macnab*, 222 Or App 332, 335, 194 P3d 164 (2008).

*Bivins* illustrates that distinction. There, the defendant was convicted of assault, which was elevated to a felony offense based on the jury's finding that the defendant's children witnessed the assault. *Bivins*, 191 Or App at 462. At trial, the defendant moved for a judgment of acquittal on the grounds that the state had presented insufficient evidence that a minor child had witnessed the fight between the defendant and his former girlfriend. *Id.* at 465. The state presented no direct evidence of what the children perceived and relied on circumstantial evidence to prove that a child had witnessed the assault. The state's theory was that "(1) the children were in the house; (2) by being in the house, they could have heard or seen defendant strike [the victim]; and therefore (3) the jury could infer that [the child] heard or saw the assault with sufficient awareness to have witnessed it." *Id.* at 468. Although there was sufficient evidence from which to draw the first two of those inferences, we explained that the third logical inference required "several additional intermediate inferences." *Id.* at 469. Because the record did not indicate whether the sound of the assault could be heard above the noise of the argument or "what the children were doing or what they actually saw and heard," the "minimal circumstantial evidence presented by the state" required "too much stacking of inferences and, ultimately, too great an inferential leap." *Id.* at 469-70.

Courts are frequently required to make such a distinction in cases where the state must prove a defendant's mental state, because a defendant's subjective intent is rarely proved by direct evidence. Rather, "jurors ordinarily infer intent from circumstantial evidence." *State v. Hennagir*, 246 Or App 456, 462, 266 P3d 128 (2011), *rev den*, 352 Or 33 (2012). Such circumstantial evidence generally consists of "the acts of the defendant as they relate to the action element of the offense." *State v. Martin*, 243 Or App 528, 534, 260 P3d 197 (2011) (internal quotation marks omitted). Whether a defendant's act may form the basis for

an inference of that defendant's mental state depends on the facts and circumstances of a particular case, as illustrated by the following cases.

In *State v. Hendricks*, 273 Or App 1, 18, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016), the defendant was convicted of coercion, among other things, for repeatedly punching the victim in the head while she attempted to retrieve her study materials from her living room. In accordance with the elements of coercion as alleged, the state was required to prove that the defendant intended to compel the victim to abstain from conduct in which she had a legal right to engage. *Id*. At trial, the evidence demonstrated that the defendant assaulted the victim, but there was "no evidence probative of defendant's specific intent, if any, in engaging in that assaultive conduct." *Id*. at 19. For example, there was no evidence of what the defendant said to the victim, "nor [was] there evidence of some expressive gesture or act" apart from the assault, that bore on the defendant's intent. *Id*. As a result, we held that the evidence was insufficient to establish that the defendant intended to compel the victim to abstain from conduct in which she had a legal right to engage. *Id*.

In *State v. Nelson*, 267 Or App 621, 625-26, 341 P3d 787 (2014), the defendant was charged with disorderly conduct for "knowingly" creating a risk of "public inconvenience, annoyance and alarm" by "initiating and circulating a report of an impending catastrophe in a school." The defendant and the defendant's friend each had accounts with "Myspace," a social media website. The friend's account was accessible to the public. The friend posted, on his own page, that he wanted to carry out a school shooting at the local high school. The defendant replied to the post in the comments section stating that he wanted to participate. Another person, who did not know the defendant, saw the conversation on the friend's public page and reported it to police. *Id*. at 624-25. Because one element of that crime was "the culpable mental state of knowingly," the state was required "to prove that, when defendant made the relevant statements, he knew that he was creating a risk of public inconvenience, annoyance and alarm." *Id*. at 626 (internal quotation marks and brackets omitted). We determined that

there was no evidence "that defendant knew that his contribution to the conversation would ultimately move beyond the conversation itself so as to cause the specified risks." *Id*. at 627. In fact, the evidence demonstrated that the third party who reported the conversation did not know the defendant and she did not indicate to the defendant that she took the conversation seriously. Therefore, we concluded that "no reasonable juror could find, on the evidence in the record and inferences drawn from it, that defendant knew that [the third party] would make [the] report." *Id*.

Returning to the issue before us, the state had to prove, among other things, that defendant intended to subject K to alarm by conveying an electronic threat to commit a felony involving K's person. Here, the state did not present any direct evidence of defendant's intent that K see the threatening post and be alarmed as a result. In fact, testimony that defendant was "upset with her boss" was the only evidence of defendant's reason for creating the post at all. The state's indirect evidence concerning defendant's intent to convey a threat to K consisted of testimony that defendant wrote the Facebook post, that defendant was "upset with her boss," that more than one individual sent K a screenshot of the post, and the post itself. The state argues that, from that evidence, a factfinder could reasonably infer that defendant acted with the conscious objective for K to see or be informed of the threatening post, thereby creating alarm.

We disagree. Although the posts and defendant's own comments to them are written as though directed to K, that fact alone cannot support an inference of defendant's intent, because the probative significance of those statements varies greatly depending on the context in which they appear. If, for example, defendant wrote those same statements in her personal diary, the statements would provide little support to the contention that defendant intended for K to see the threat. Conversely, if defendant wrote those statements in a Facebook post to which K had access as a Facebook friend, the statements would provide significant support for the inference that defendant intended K to see the threat. Therefore, we must examine the context surrounding the post.

On appeal, the state treats the post as one not accessible to the general public and explains that defendant "limited her posts only to persons designated as her 'friends.'" Only one witness, Delange, testified to seeing the post directly through Facebook. He was Facebook friends with defendant and testified that "that is how" he observed the message. Every other witness who saw the posts observed them through screenshots received from other persons. Regardless, to prove that it was defendant's conscious objective for K to perceive the threat, the state must have presented some evidence from which to infer that defendant either believed that K was a Facebook user and would see the threat or that another Facebook user would communicate the threat to her.

The state did not present any evidence that could support an inference that defendant believed K had a Facebook account and would therefore see the threat. Certainly, the state did not present evidence from which to infer defendant believed that K, who does not have a Facebook account, was her Facebook friend. Nor did the state present evidence that the post was viewable by all Facebook users.

To conclude that defendant intended for another Facebook user to send the threat to K, the inferences required depends on whether the post was viewable by defendant's Facebook friends or the public. If the Facebook post was viewable by defendant's friends only, as is the case here, a factfinder must be able to infer reasonably that (1) one or more of the "numerous" people that sent screenshots of the post to K were friends with defendant on Facebook, (2) defendant was aware that one or more of those Facebook friends was a mutual acquaintance of K, and (3) defendant desired for one or more of those Facebook friends to communicate the threat to K.

Although the first of those inferences is reasonable, the second and third require too much speculation based on this scant record. There is no evidence from which to infer defendant's awareness that any of her Facebook friends were mutual acquaintances of K, or that defendant desired for one of those people to share the Facebook post with K. The state did not present evidence of the number of defendant's

Facebook friends, or exactly who sent the screenshots to K. Only the identities of two of K's Facebook friends are apparent from the record, Delange and a friend of defendant who commented on the post, but who was not otherwise involved in the case. There was no evidence that either of those individuals had a mutual relationship with K. Put another way, there was insufficient evidence to bridge the gap between the post, which was viewable by a group to which K indisputably did not belong as a friend or member of Facebook, and the inference of defendant's conscious objective that K see the post.

There was also no evidence that the Facebook post was viewable by the general public and that, therefore, defendant desired for one or more of those public Facebook users who might know K to communicate the threat to K. As in *Nelson*, which involved comments made within a public account, there is little evidence in the record that defendant knew—let alone intended—that her post and subsequent comments "would ultimately move beyond the conversation itself." 267 Or App at 627. Evidence of the identities of intermediaries might suffice, and the lack of that evidence highlights the evidentiary shortcomings in this case. The trial court's hypothetical, noted above, is illustrative of that problem. Under that hypothetical, in which defendant tells K's husband that she plans to kill or harm K, there would be little doubt as to defendant's intent for K to receive the message. That functions as a strong example of intent to communicate a threat indirectly precisely because the intermediary is the addressee's husband—a person who is very likely to tell the addressee about the threat. In contrast, we know nothing about the identities of the intermediaries here.

Because the state failed to present legally sufficient evidence of defendant's intent in writing the Facebook post, we conclude that no rational factfinder could find that the state proved that defendant intended to subject K to alarm by conveying a threat to commit a felony involving K's person. Therefore, the trial court erred in denying defendant's motion for judgment of acquittal, and we reverse defendant's conviction for harassment.

Reversed and remanded.