Argued and submitted September 24, 2009, affirmed April 14, petition for review denied August 18, 2010 (348 Or 669)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOEL DENNIS BERRINGER,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0602030; A137186

229 P3d 615

Leland R. Berger argued the cause and filed the brief for appellant.

Amanda J. Austin, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals his conviction for unlawful possession of marijuana, ORS 475.864, assigning error to the trial court's denial of his motion to suppress and his motion to dismiss. In the motion to suppress, defendant argued that probable cause to arrest him dissipated once he showed the arresting Clackamas County deputy a document establishing that defendant, a California resident, was qualified to possess marijuana under California's medical marijuana laws. According to defendant, that document should have informed the arresting officer that the arrest violated two provisions of the United States Constitution: the Full Faith and Credit Clause, which, he argued, requires Oregon to honor the immunity from prosecution that is conferred on him by California law; and the Privileges and Immunities Clause, which prohibits Oregon from enforcing its possession of marijuana laws against him because doing so inhibits his right to travel from state to state. Defendant also made similar arguments in a motion to dismiss, which the trial court also denied. We affirm.

The following facts are undisputed. Defendant was stopped for speeding in Clackamas County by Deputy Sheriff Nashif. As he neared the automobile, Nashif smelled "unburnt" marijuana and saw a digital scale and marijuana residue inside. In response to Nashif's questions, defendant initially denied possessing any marijuana, but ultimately gave Nashif a paper bag that contained five smaller bags, two of which appeared to Nashif to contain more than one ounce of marijuana. Defendant also presented a document to Nashif entitled "Physician's Statement," in which his doctor, a California licensed physician, recommended that defendant use medical cannabis at the estimated rate of 1.5 ounces per week to treat various health concerns including anxiety due to a "troubled history with father," heavy drinking, headaches, asthma, and bad moods. Under California law, that document, if authentic, apparently allows defendant to possess up to two pounds of marijuana.[1] Nashif arrested

---

[1] California Health and Safety Code, section 11362.77, of the California Compassionate Use Act, provides:

"(a) A qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana per qualified patient.

defendant and then searched his automobile, finding what a crime lab report subsequently found to be 922.9 grams of marijuana, approximately 26.9 grams more than two pounds.

Defendant was indicted on one charge of unlawful possession of marijuana, ORS 475.864, one charge of unlawful delivery of marijuana, ORS 475.860, and one charge of unlawful manufacture of marijuana, ORS 475.856. At a pretrial hearing, defendant argued that, upon presenting the California physician's recommendation to Nashif, probable cause for the arrest and search dissipated. He conceded that he was lawfully stopped for speeding, and he raised no argument that the search of his automobile violated Article I, section 9, of the Oregon Constitution or the Fourth Amendment to the United States Constitution for any reason beyond the asserted fact that it occurred after probable cause had dissipated. In other words, he conceded that, if probable cause did not dissipate, the search was otherwise lawful. Defendant also argued that the recommendation from his California physician was due full faith and credit in Oregon and that failure to honor his California documentation and status as a medical marijuana patient interfered with his constitutional right to travel. The court denied the motion to suppress, as

---

"* * * * *

"(c) Counties and cities may retain or enact medical marijuana guidelines allowing qualified patients or primary caregivers to exceed the state limits set forth in subdivision (a)."

Nevada County, in turn, provides the following guidelines concerning the amount of marijuana that a qualified patient may possess:

"Based upon verification of a valid oral or written recommendation and absent evidence of sales or possession for sale, a person with such a recommendation from a physician shall be allowed to possess up to two pounds of dried marijuana per qualified patient consistent with that patient's recommendation.

"* * * * *

"A qualified patient or primary caregiver may possess an amount greater than listed if the amount is reasonably related to, and consistent with, the patient's **documented** recommendation."

Nevada County, Cal, Medical Marijuana Inter-Agency Protocol (June 2007), 3-4 (boldface in original). Defendant, a Nevada County resident, argues that, because his physician's recommendation allowed him to use medical marijuana at the rate of 1.5 ounces per week and 4.9 pounds per year, he was entitled, under California law and as a Nevada County resident, to possess, in Oregon, more than the two pounds of marijuana seized from his vehicle.

well as a motion to dismiss based on the same arguments. Defendant then conditionally pleaded guilty based on stipulated facts, reserving his right to appeal the court's denial of his pretrial motions, ORS 135.335(3), and was subsequently convicted of unlawful possession of marijuana. The other counts were dismissed. This appeal ensued.

 Defendant argues that, once he showed the physician's recommendation to the deputy, "there no longer was probable cause to support the continued investigation," and that, therefore, all evidence discovered thereafter should have been suppressed as the fruit of the unlawfully extended detention. Probable cause requires that an officer's belief that the defendant has committed an offense be objectively reasonable. *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008). "A stop that begins lawfully can become unlawful when the reason for the stop has dissipated." *State v. Castrejon*, 79 Or App 514, 520, 719 P2d 916 (1986) (citation omitted); *see also State v. Farley*, 308 Or 91, 775 P2d 835 (1989).

 In this case, Nashif's authority to investigate the lawfulness of defendant's possession of marijuana did not end when he saw defendant's California physician's recommendation. Probable cause exists when a law enforcement officer reasonably believes that, more likely than not, the suspect has committed an offense. *Miller*, 345 Or at 186. Defendant does not dispute that Nashif observed defendant with what the deputy reasonably believed to be more than an ounce of marijuana. Under Oregon law, Nashif at that point had probable cause to detain defendant. ORS 475.864.[2] Defendant contends, however, that, based entirely on Nashif's observation of a document captioned "Physician's Statement," signed (but not sealed or notarized) by a person

---

[2] ORS 475.864 provides, in part:

"(1) It is unlawful for any person knowingly or intentionally to possess marijuana.

"(2) Unlawful possession of marijuana is a Class B felony.

"(3) Notwithstanding subsection (2) of this section, unlawful possession of marijuana is a violation if the amount possessed is less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moracceae. A violation under this subsection is punishable by a fine of not less than $500 and not more than $1,000."

who identified himself as a licensed physician in California, Nashif's belief that defendant was not immune from prosecution under Oregon law for possession became immediately unreasonable. We disagree. A person in Nashif's position could reasonably believe that, more likely than not, (1) defendant's unnotarized "physician's statement" was not genuine, (2) a physician's statement was not the California equivalent to an "Oregon Medical Marijuana Act" (OMMA) card, (3) California law does not immunize defendant in Oregon (a belief that, in the present case, we decide is correct), *or* (4) possession of California medical marijuana documentation made the possessor immune from prosecution, but not immune from arrest—which, in fact, is correct even in California, *see People v. Mower*, 28 Cal 4th 457, 469, 49 P3d 1067, 1074 (2002) (California Compassionate Use Act (CCUA) is a defense to possession of marijuana prosecution; CCUA "does not grant any immunity from arrest, and certainly no immunity that would require reversal of a conviction because of any alleged failure on the part of law enforcement officers to conduct an adequate investigation prior to arrest").

■■ Further, the legal arguments underlying defendant's motion to suppress—that the Full Faith and Credit Clause and the Privileges and Immunity Clause preclude his arrest and prosecution—are wrong. Article IV, section 1, of the United States Constitution provides, "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." Defendant argues that this clause requires Oregon to apply the CCUA, a "public act," to California residents when they are in Oregon. According to defendant, Oregon must do so because one state's laws apply in a sister state unless the home state law "conflicts" with the host state's law, and California's medical marijuana law does *not* conflict with Oregon's medical marijuana law. The state, citing *Franchise Tax Bd. of Cal. v. Hyatt*, 538 US 488, 494, 123 S Ct 1683, 155 L Ed 2d 702 (2003), responds that the clause "does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." We need not decide which interpretation applies in this case, however, because defendant's argument is fundamentally misconceived. Even if defendant could persuade us that the

clause means what he says it does, it would avail him nothing. The CCUA by its terms provides nothing more than a defense against the enforcement of certain *California* marijuana laws:

"Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

California Health and Safety Code § 11362.5(d). The CCUA does not (and could not) provide a defense against enforcement of Oregon's marijuana laws in Oregon. Put another way, the Full Faith and Credit Clause requires (at most) that a state give effect to rights established between parties that arise from judgments, agreements, or statutes originating in other states. *See Delehant v. Board on Police Standards*, 317 Or 273, 282, 855 P2d 1088 (1993). The CCUA establishes (again, at most) rights between qualified California residents and the State of California—not the State of Oregon. Thus, in this case, Oregon *does* give full faith and credit to the CCUA, because Oregon does not (and could not) enforce California's marijuana laws against defendant.

■　　Finally, defendant argues that, in enforcing Oregon's law against possession of marijuana, the state violated his right to travel from state to state. He relies on cases holding that a state violates that right when it imposes burdens on nonresidents that it does not impose on residents. In the present case, he argues, Oregon provides its own residents with an immunity from some possession of marijuana prosecutions, while withholding that immunity from nonresidents. For the reasons that follow, we reject that argument.

■■　　Although not named in the constitution, a right of interstate travel undoubtedly exists: "[B]y virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." *Saenz v. Roe*,

526 US 489, 501, 119 S Ct 1518, 143 L Ed 2d 689 (1999) (quoting US Const, Art IV, § 2). The source of this right in the constitution has never been identified definitively. *Saenz* locates it in the Privileges and Immunities Clause of Article IV, section 2, as do several other cases. *E.g.*, *Toomer v. Witsell*, 334 US 385, 395, 68 S Ct 1156, 92 L Ed 1460 (1948); *Hague v. C.I.O.*, 307 US 496, 511, 59 S Ct 954, 83 L Ed 1423 (1939). Other cases rely on the Equal Protection Clause under the theory that the right to travel from state to state is so fundamental that a state cannot enact statutes that discriminate between state residents and nonresidents and thereby discourage the influx of the latter. *E.g.*, *Memorial Hospital v. Maricopa County*, 415 US 250, 251, 94 S Ct 1076, 39 L Ed 2d 306 (1974). Yet other cases candidly acknowledge that there is no need "to ascribe the source of this right to travel interstate to a particular constitutional provision." *Shapiro v. Thompson*, 394 US 618, 630, 89 S Ct 1322, 22 L Ed 2d 600 (1969), *overruled on other grounds by Edelman v. Jordan,* 415 US 651, 671, 94 S Ct 1347, 39 L Ed 2d 662 (1974).

██ In some respects, the contours of the right of interstate travel are as vague as its source. For example, a state statute that taxes nonresident commercial fishermen for the right to fish in the state's waters at a rate that is significantly greater than the rate imposed on residents is unconstitutional, *Toomer*, 334 US at 403, but a state statute that charges nonresidents more than residents for a recreational hunting license is not, *Baldwin v. Montana Fish and Game Comm'n*, 436 US 371, 391, 98 S Ct 1852, 56 L Ed 2d 354 (1978). It is clear, however, that access to medical treatment is among the interstate traveler's protected rights. *Saenz*, 526 US at 502 (constitution provides "important protections for nonresidents who enter a State * * * to procure medical services"); *Memorial Hospital*, 415 US at 269 (invalidating one-year durational residence requirement for access to publicly funded nonemergency hospitalization and medical care); *Doe v. Bolton*, 410 US 179, 200, 93 S Ct 739, 35 L Ed 2d 201 (1973) (invalidating residence requirement to obtain abortion).

Unlike the residence requirements struck down in *Memorial Hospital*, *Doe*, and *Shapiro* (durational residence requirement to receive welfare), the OMMA does not impose

any requirement on nonresident applicants that it does not also impose on Oregon residents. It is true that the "findings" section of the OMMA refers to "Oregonians" with debilitating medical conditions and states that they "should be allowed to use small amounts of marijuana without fear of civil or criminal penalties," ORS 475.300(2), and "discuss freely with their doctors the possible risks and benefits of medical marijuana," ORS 475.300(3). Those provisions are merely hortatory. The operational provisions of the OMMA and its implementing regulations apply with equal rigor to residents and nonresidents. Residents and nonresidents alike must either possess or have applied for an OMMA registration card. ORS 475.309(1)(a). Both must have documentation from the attending physician, attesting that the person has "a debilitating medical condition and that the medical use of marijuana may mitigate the symptoms or effects" of the condition. ORS 475.309(2). Both must pay the same registration fee. *Id.*

There are only two respects in which the OMMA could be considered to impose a barrier to nonresidents. The first is that the attending physician must be "licensed under ORS chapter 677." However, that chapter has reciprocity provisions allowing nonresident physicians to obtain Oregon licenses. ORS 677.120; ORS 677.125. Further, an "attending physician" is one who has "primary responsibility" for the care of the applicant, ORS 475.302(1), including an Oregon-licensed physician who "[p]rovides medical specialty care and treatment to the patient," OAR 333-008-0010(18)(b). Thus, a nonresident applicant need not establish a long-term relationship with an Oregon physician. In any event, we have found no authority for the proposition that the difficulty a nonresident might encounter in finding an Oregon attending physician could be considered an impediment of constitutional magnitude.

Second, an applicant for an OMMA registration card must provide identification. OAR 333-008-0020(1) provides:

> "A person may apply for a registry identification card * * *. In order for an application to be considered complete, an applicant must submit the following:
>
> "* * * * *

"(b) Copies of legible photographic identification * * *. The following are acceptable forms of identification:

"(A) Oregon Driver's License;

"(B) Oregon Identification Card with photo;

"(C) Voter Registration Card with photo[.]"

Thus, if the list of documents in OAR 333-008-0020(1)(b) is exhaustive—that is, if the documents in (A), (B), and (C) are the only acceptable photographic identification documents—then it is easier for an Oregon resident to submit a complete application than for a nonresident, because the resident has three options while the nonresident has only one, and even then, only if he or she lives in a state that has a voter registration card with photo. However, nothing in the text of OAR 333-008-0020(1)(b) establishes that the list is exhaustive. The language is ambiguous, and, in order to avoid even the possibility of constitutional infirmity, *State v. Rodriguez*, 217 Or App 24, 34, 175 P3d 471 (2007), we interpret the list as nonexhaustive, that is, as a list of documents that are *conclusively* acceptable but not as a complete list of all photo identification cards that *can be* acceptable.

Further, even if Oregon law made access to medical marijuana more difficult for nonresidents, that would not violate defendant's right to travel. As the Supreme Court has explained:

"Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally."

*Baldwin*, 436 US at 383. Although access to publicly funded medical care, *Memorial Hospital*, and abortion services, *Doe*, have been held to fall into the latter category, we conclude that access to a particular form of treatment—in this case, access to a particular drug—is not a privilege "bearing upon the vitality of the Nation as a single entity." Defendant's motion to dismiss relies on the same faulty constitutional

arguments as his motion to suppress. Even if that motion were cognizable, it would fail for the same reasons that the motion to suppress failed.[3]

Affirmed.

---

[3] Neighboring states, with their own medical marijuana laws, have recently reached similar conclusions. *State v. Adler*, 108 Haw 169, 176, 118 P3d 652, 659 (2005); *State v. Tracy*, 158 Wash 2d 683, 147 P3d 559 (2006); *State v. Barber*, 141 Wash App 1039, 2007 WL 4125229 (Wash App Div 3, Nov 20, 2007). Also, some states have medical marijuana laws that specifically extend protections to patients who obtain registry identification cards or other functionally equivalent authority from their resident states. *E.g.*, Mont Code Ann § 50-46-201(8); RI Gen Laws § 21-28.6-4(k).