Argued and submitted June 6, 2013, reversed and remanded for entry of judgment on jury verdict May 13, 2015

Allan F. KNAPPENBERGER,
an individual,
*Plaintiff-Appellant,*

*v.*

Adelbert John DAVIS-STANTON,
an individual,
aka John Stanton, aka John Davis-Stanton,
*Defendant-Respondent.*

Multnomah County Circuit Court
091216881; A148999

351 P3d 54

Jonathan Henderson argued the cause for appellant. With him on the briefs was Davis Rothwell Earle & Xochihua, P. C.

Robert M. Snee argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

This appeal presents the interesting question whether ORS 12.150—a statute that, among other things, tolls statutes of limitation that apply to claims against a defendant when the defendant moves out of the state after the claims have accrued—is unconstitutional as applied in the circumstances of this case. The trial court concluded that it was and, accordingly, granted defendant's motion for judgment notwithstanding the verdict (JNOV) in favor of plaintiff because, in the absence of the tolling provision, plaintiff's claims were barred by the applicable statute of limitation. Plaintiff appeals the resulting judgment for defendant, assigning error to the trial court's JNOV ruling. Defendant cross-assigns error to the trial court's denial of his motion for leave to file an amended answer. As explained below, we agree with plaintiff that the trial court erred in entering judgment for defendant. We reject defendant's cross-assignment of error without discussion. Accordingly, we reverse and remand with instructions to enter judgment for plaintiff on the jury verdict.

## I. FACTS

On appeal after a JNOV, we view the evidence in the light most favorable to the party who prevailed before the jury, here, plaintiff. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 142, 26 P3d 785 (2001). In this case, however, the facts relevant to the issues presented on appeal are essentially undisputed. In December 2009, plaintiff filed an action against defendant seeking to recover unpaid legal fees that defendant, a former client, allegedly owed him. Plaintiff asserted claims for "account stated" and *quantum meruit*. In his answer, defendant raised several affirmative defenses, including that plaintiff's claims were barred because they had not been commenced within the six-year limitation period provided in ORS 12.080 and ORS 12.090.[1]

---

[1] ORS 12.080(1) provides that, subject to certain exceptions not relevant here, "[a]n action upon a contract or liability, express or implied," "shall be commenced within six years." ORS 12.090 provides, in part, that, "[i]n an action to recover a balance due upon an account, the cause of action shall be deemed to have accrued from the time of the last charge or payment proved in the account."

The case was tried to a jury. At the close of evidence, both parties moved for a directed verdict on the statute-of-limitation defense. They agreed to stipulate to the following facts: that plaintiff's action was filed in December 2009; that plaintiff's claims had accrued, at the latest, on July 25, 2002; that a six-year limitation period applied; and that defendant had moved from Oregon to Washington in November 2003 and has lived in the Vancouver-Battleground area since then. Given those facts, plaintiff contended that defendant's statute-of-limitation defense failed because, under ORS 12.150,[2] the limitation period was tolled when defendant moved out of state in November 2003, and, consequently, plaintiff's action had been commenced well within the six-year limitation period. Defendant, for his part, argued that ORS 12.150 does not apply to toll the statute of limitation because he was subject to service and personal jurisdiction under ORCP 4 E notwithstanding his move to Washington and, even if the statute were otherwise applicable, applying it in this case would be unconstitutional under the Commerce Clause of the United States Constitution, citing *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 US 888, 108 S Ct 2218, 100 L Ed 2d 896 (1988) (*Bendix*). Consequently, according to defendant, plaintiff's claims were time barred under ORS 12.080(1) because they had not been commenced within six years of their accrual, and he was entitled to a directed verdict in his favor on the claims.

The trial court summarized the competing motions:

> "And so it's the plaintiff's position that under the statute cited in the written material—I think it's [ORS] 12.150, that the Statute of Limitations is tolled and that as a matter of law the case—the claims are not time-barred.

___

[2] ORS 12.150 provides:

"If, when a cause of action accrues against any person, the person is out of the state and service cannot be made within the state or the person is concealed therein, such action may be commenced within the applicable period of limitation in this chapter after the return of the person into the state, or after the termination of the concealment of the person; *and if, after a cause of action has accrued against a person, the person shall depart from and reside out of this state, or if the person is concealed therein, the time of the absence or concealment of the person shall not be deemed or taken as any part of the time limited for the commencement of such action.*"

(Emphasis added.)

"And it's the defense position that the statute as applied in this case would be unconstitutional and therefore the claims are time-barred."

With the parties' agreement, the trial court reserved ruling on the directed-verdict motions pursuant to ORCP 63 B.[3]

The jury returned a verdict in favor of plaintiff on each of his claims in the amount of $58,722.97. The parties then agreed to have the trial court treat defendant's motion for a directed verdict as a JNOV motion, without further briefing. The court subsequently issued an opinion concluding, first, that ORS 12.150 "unambiguously applies" to plaintiff's claims and, second, that it "cannot be applied to toll the statute of limitations in this case because doing so violates the Commerce Clause." On the constitutional question, the court ultimately agreed with the reasoning of courts from other jurisdictions, especially *Heritage Marketing and Ins. Services, Inc. v. Chrustawka*, 160 Cal App 4th 754, 73 Cal Rptr 3d 126 (2008) (*Heritage Marketing*), and *State ex rel Bloomquist v. Schneider*, 244 SW3d 139 (Mo 2008), that "denying a defendant the benefit of the statute of limitations due to this type of tolling statute burdens the defendant's ability to move from state to state, and that alone is a sufficient effect on interstate commerce to implicate the Commerce Clause." (Footnote omitted.) Accordingly, the court granted defendant's JNOV motion and entered a general judgment for defendant, awarding him costs and disbursements. Plaintiff appeals.

## II.  PARTIES' ARGUMENTS

Plaintiff assigns error to the trial court's grant of defendant's JNOV motion. He contends that the court erred "because there was no evidence in the trial court record regarding any interference with, let alone burden on [i]nterstate [c]ommerce." And, plaintiff contends, any inferences

---

[3] ORCP 63 B provides:

"In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in such party's favor if the verdict is otherwise than as would have been directed or if the jury cannot agree on a verdict."

that can be drawn from the record must be resolved in his favor. According to plaintiff, defendant therefore did not satisfy his burden of proving that the statute discriminates against or unduly burdens interstate commerce, and the cases relied on by the trial court to conclude otherwise are inapposite.

Defendant responds, first, that plaintiff's argument on appeal is unpreserved, "as [plaintiff's] argument relates *not only to* the scope and meaning of the statutory language of ORS 12.150 and the U. S. Constitution, but, *even more so*, it relies upon the premise that particular proof was deficient, and such reasons and arguments were never timely or properly urged to the trial court" (emphasis added), nor are they reviewable as plain error. He also contends that, because plaintiff did not provide a complete transcript of the evidence presented at trial, his arguments regarding the adequacy of the evidence are not reviewable. As to the merits, defendant contends that the trial court correctly ruled that ORS 12.150—like the tolling statutes at issue in cases from other jurisdictions, which toll the limitation period based solely on a defendant's out-of-state residence— "burdens [defendant's] ability to move from state to state, which is an impermissible burden on interstate commerce, particularly when balanced against the ability to obtain jurisdiction over [defendant] under the Oregon long[-]arm statute."

## III. ANALYSIS

### A. *Applicability of ORS 12.150*

Although, as noted, plaintiff's assignment of error focuses on the trial court's ruling that ORS 12.150 is unconstitutional as applied, we turn first to the predicate ruling of the court that ORS 12.150 would otherwise apply in this case. *See Leo v. Keisling*, 327 Or 556, 562, 964 P2d 1023 (1998) ("[I]t is well established that this court ordinarily does not decide constitutional issues if there is an adequate subconstitutional basis for decision."); *State v. Nelson*, 267 Or App 621, 624, 341 P3d 787 (2014) (explaining that when we might resolve a case on either constitutional or subconstitutional gounds, "we will not review the constitutional question unless we have resolved the subconstitutional question

and that resolution does not end the inquiry"). We agree with the trial court that the statute is applicable.

Again, ORS 12.150 provides:

"If, when a cause of action accrues against any person, the person is out of the state and service cannot be made within the state or the person is concealed therein, such action may be commenced within the applicable period of limitation in this chapter after the return of the person into the state, or after the termination of the concealment of the person; and if, after a cause of action has accrued against a person, the person shall depart from and reside out of this state, or if the person is concealed therein, the time of the absence or concealment of the person shall not be deemed or taken as any part of the time limited for the commencement of such action."[4]

Thus, the tolling statute addresses both the circumstance where a person is out of the state (or concealed within the state) when the cause of action accrues against the person, and where the person departs from and resides out of the state (or is concealed within the state) after the cause of action accrues. Here, it is undisputed that defendant left the state after plaintiff's claims had accrued.

In *Whittington v. Davis*, 221 Or 209, 350 P2d 913 (1960), the Supreme Court considered the effect of the 1959 version of ORS 12.150 in the context of an action for personal injuries sustained in a car accident.[5] The plaintiff contended that, because the defendant had "either secreted herself within this state or had absented herself therefrom," ORS 12.150 (1959) applied to toll the running of the statute of limitation during the period of the defendant's absence or

---

[4] The statute has been in existence, in similar form, since statehood. *See* General Laws of Oregon, Civ Code, ch I, title II, § 16, p 108 (Deady & Lane 1843-1872).

[5] ORS 12.150 (1959) provided:

"If, when a cause of action accrues against any person, he is out of the state or concealed therein, such action may be commenced within the applicable period of limitation in this chapter after his return into the state, or the time of his concealment; and if, after a cause of action has accrued against a person, he shall depart from and reside out of this state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limited for the commencement of such action."

concealment. *Whittington*, 221 Or at 210. The Supreme Court disagreed, holding that the tolling statute was inapplicable because *former* ORS 15.190 (1959), *repealed by* Or Laws 1979, ch 284, § 199, gave the plaintiff the ability to serve the defendant in Oregon through a statutorily designated agent. *Former* ORS 15.190 provided that the Secretary of State was an agent for the purpose of serving any motorist on a claim arising from an accident or collision while using an Oregon highway. *Whittington*, 221 Or at 210. The court rejected the plaintiff's contention that the court was implicitly amending ORS 12.150 (1959) to add a qualification not otherwise expressed in the statute—*viz.*, that tolling under the statute does not apply when the defendant is a motorist. *Whittington*, 221 Or at 212. The court reasoned:

> "The effect of our holding is merely to say that a motorist using the highways of Oregon, within ORS 15.190, *makes himself available for the service of summons upon him by the designation of a lawful agent for that purpose.* The availability of the right to compel the attendance of the defendant or to obtain and enforce a valid judgment against him is all that a plaintiff is entitled to. When such a right is present there is no cause to apply the tolling statute at all."[6]

*Id.* (emphasis added); *see also Winters v. Jacobson*, 221 Or 214, 215, 350 P2d 1078 (1960) (memorandum opinion holding that *Whittington* controlled under similar circumstances).

At the time of *Whittington*, the words "and service cannot be made within the state" did not appear in ORS 12.150. *See* 271 Or App at 20 n 5 (setting out text of ORS 12.150 (1959)). That wording was added to the first part of the statute in 1973. *See* Or Laws 1973, ch 206, § 1 ("If, when a cause of action accrues against any person, he is out of the state *and service cannot be made within the state* * * *." (Emphasis added.)) As we later observed in *Santos v. The Flxible Co. Inc.*, 41 Or App 89, 93 n 5, 597 P2d 373 (1979), that addition "indicate[d] legislative approval of the *Whittington* rule." We went on to apply the *Whittington* rule in *Santos*, concluding that, because substituted service (on

---

[6] The court did not specifically identify which part of ORS 12.150 was at issue, but described the statute generically as follows: "ORS 12.150 provides that statutes of limitation are tolled when the defendant is a nonresident or secreted within the state." *Whittington*, 221 Or at 212.

the Corporation Commissioner) of the nonresident corporation was available under *former* ORS 57.700(2)(b) (1979), *repealed by* Or Laws 1987, ch 52, § 181, ORS 12.150 did not apply to toll the applicable statute of limitation. *Santos*, 41 Or App at 92-93.[7]

Ten years later, we decided *Gary M. Buford and Associates, Inc. v. Guillory*, 98 Or App 691, 780 P2d 783, *rev den*, 308 Or 660 (1989) (*Guillory*). There, the plaintiff contended that the six-year statute of limitation on his action for recovery of amounts due on two promissory notes was tolled under ORS 12.150 when the defendant left the state *after* the right of action had accrued. *Id*. at 693. Thus, it was the second part of ORS 12.150 that was implicated in *Guillory*.[8] Agreeing with the plaintiff, we concluded that the "plain language" of ORS 12.150 applied to toll the limitation period when the defendant left the state. *Guillory*, 98 Or App at 694. The defendant argued that—just as in *Whittington* and *Santos*—the tolling statute did not apply "because alternative methods of service, specifically mailing and publication, were available." *Id*. We rejected that argument, distinguishing *Whittington* and *Santos* on the ground that neither involved "a situation where a resident defendant left the state *after* a claim accrued," and held that "ORS 12.150 does not provide such an exception to tolling when a defendant leaves the state *after* a claim has accrued." *Guillory*, 98 Or App at 694 (emphases added). Thus, without reference to the words of the statute, we appeared to discern a distinction between the two parts of the statute.

However, we later (and, as explained below, correctly) disavowed that reasoning in *Wright v. Osborne*, 151 Or App 466, 469 n 1, 949 P2d 321 (1997), *rev den*, 327 Or 448 (1998). In *Wright*, the question was whether ORCP 7 D(4), which had replaced *former* ORS 15.190, affected the vitality of the exception to tolling announced in *Whittington*. We concluded that it did not, explaining that

---

[7] We expressly did not address "whether the same result would obtain because of ORS 14.035, our long-arm statute." *Santos*, 41 Or App at 93.

[8] In all material respects, ORS 12.150 was the same at the time of *Guillory* as it is today. Indeed, the legislature has only amended the statute once since 1973. *See* Or Laws 1987, ch 158, § 4 (changing "conceal himself" in the second part of the statute to "if the person is concealed therein").

"the two provisions are similar in the critical respect on which the *Whittington* decision turned: *ultimately*, regardless of where the defendant might be or how successfully the defendant may have obscured his whereabouts, ORCP 7 D(4) gives the plaintiff the same ability as ORS 15.190 did 'to compel the attendance of the defendant or to obtain and enforce a valid judgment against him,' *by consummating service on the state agency.*"

*Wright*, 151 Or App at 470 (first emphasis in original; second emphasis added).[9]

We also explained in a footnote that, although our earlier conclusion in *Guillory* was correct, our explanation was not. Specifically, the feature distinguishing *Guillory* from *Whittington* and *Santos* was not, as we had said, that *Guillory*—unlike the earlier cases—involved a situation in which the defendant had left the state *after* the claim had accrued. *Wright*, 151 Or App at 469 n 1. Rather, the reason *Whittington* and *Santos* did not assist the defendant in *Guillory* was because, in the earlier cases, the relevant statutes permitted a form of substituted service *instead of* personal service on the defendant, whereas "the general mailing and publication methods on which the defendant relied in *Guillory* are simply alternative (and less satisfactory) methods of constructively serving the *defendant himself.*" *Wright*, 151 Or App at 469 n 1 (emphasis in original).

Subsequently, in *Herzberg v. Moseley Aviation, Inc.*, 156 Or App 1, 4-5, 964 P2d 1137 (1998), *rev den*, 328 Or 275 (1999), we "adhered" to our statement in *Wright*, which we understood to mean that the statute of limitation is tolled under ORS 12.150 "as to a defendant who is absent from the state and can be served only by mail or other indirect means." *Id.* at 4. We explained that, under the statute, the key inquiry is "the possibility of service *within the state*, not service in general." *Id.* at 5 (emphasis in original). To conclude otherwise, we reasoned, would read the phrase "within the state" out of the statute, *see* ORS 12.150 ("[i]f, when a cause of action accrues against any person, the person is

---

[9] At the time, ORCP 7 D(4) provided, "in general terms, that service in actions arising out of a vehicular accident may ultimately be accomplished through [the Motor Vehicles Division]." *Wright*, 151 Or App at 469 (describing the then-current version of ORCP 7 D(4)).

out of the state and service cannot be made within the state
\* \* \*"), and

> "effectively make ORS 12.150 inoperable in the case of
> any defendant who could be served anywhere and by any
> means. Because that would include all defendants over
> whom the Oregon courts *could* obtain personal jurisdiction,
> ORS 12.150 would not apply to any defendant \* \* \* and the
> statute would be rendered a nullity."

*Id.* (emphasis in original). We emphasized that "[t]he
objective of the statute is not to assure that service can be
effected, but to assure that a plaintiff's ability to bring a
timely action is not defeated or frustrated by the inaccesibil-
ity of the defendant." *Id.* And, the legislature determined
that limiting the benefit of the suspension period under ORS
12.150 to situations where "service cannot be made within
the state" would properly further that objective. *Id.*[10]

The legislative history of the 1973 amendment to
ORS 12.150 that added the phrase "and service cannot be
made within the state" confirms our conclusion in *Wright*
(to which we adhered in *Herzberg*) that—although the place-
ment of the phrase may indicate otherwise—the legislature
did not intend to make a distinction between the two cir-
cumstances addressed in the statute. Rather, the change
was intended simply to codify existing law, specifically
*Whittington* and *Winters*. *See* Minutes, Senate Committee
on Judiciary, SB 137, Mar 7, 1973, at 2 (so stating).

At hearings on the bill, members of the Committee
on Procedures and Practice of the Oregon State Bar (OSB)
described the holding of *Whittington* and *Winters* and testi-
fied that

> "[*t*]*he proposed amendment would prevent the statute of
> limitations running where the defendant is not within the
> state but could be served outside the state under the long
> arm statute.* ORS 14.035. The proposed amendment would
> allow the statute to run if the defendant could be served
> within the state through a statutory or other type of agent
> or jurisdiction in rem is possible."

---

[10] In *Hertzberg*, because the defendant foreign corporation was not and could
not be served within the state, ORS 12.150 tolled the running of the statute of
limitation until after the plaintiff had commenced his action. 156 Or App at 6.

Testimony, Senate Committee on Judiciary, SB 137, Mar 7, 1973, Ex G (statement of William V. Deatherage and Bruce Kellington, Committee on Procedures and Practice of the OSB) (emphasis added); Testimony, House Committee on Judiciary, SB 137, May 23, 1973, Ex (unnumbered) (same). In a hearing before the House Committee on Judiciary, David Templeton, another member of the OSB procedures and practice committee, explained that the bill was intended to codify court interpretations of ORS 12.150 that, "if service could be made on Department of Motor Vehicles[,] the statute of limitations continued its run even though the man concealed himself within the state or *left the state*." Minutes, House Judiciary Committee, SB 137, May 23, 1973, at 4 (describing testimony of David Templeton) (emphasis added). That is, regardless of whether the defendant is out of state (or concealed) when the cause of action accrues or leaves (or conceals himself or herself) later, the key inquiry in determining whether ORS 12.150 applies to toll the statute of limitation is whether the defendant can be served within the state. If the answer to that question is "yes" (and the other requirements of the statute are satisfied), then ORS 12.150 does not apply and the limitation period continues to run. If the answer is "no," then the limitation period is tolled under ORS 12.150.

With that background in mind, resolution of the statutory question in this case is straightforward. Defendant argued to the trial court that the limitation period was not tolled by ORS 12.150 because he was subject to service and personal jurisdiction under ORCP 4, that is, under Oregon's long-arm rule.[11] Under the principles announced in *Wright* and *Hertzberg*—and confirmed by the legislative history of the 1973 amendment to ORS 12.150—that argument fails because ORCP 4 does not provide a mechanism for in-state service of an out-of-state defendant. Rather, ORCP 4 provides

---

[11] The introductory text to ORCP 4 provides, "A court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to Rule 7 under any of the following circumstances[.]" Subsection B through K of ORCP 4 then "describe the types of activities that provide bases for personal jurisdiction over out-of-state defendants and subsection L extends jurisdiction to the limits imposed by the Due Process Clause of the Fourteenth Amendment to the federal constitution." *Biggs v. Robert Thomas, O. D., Inc.*, 133 Or App 621, 624, 893 P2d 545, *rev den*, 321 Or 560 (1995) (footnote omitted).

that the court has personal jurisdiction over an out-of-state defendant served under ORCP 7 on claims for which the defendant is subject to jurisdiction in Oregon. ORCP 7, in turn, allows for various methods of service, including service by mail. Thus, under ORCP 4, a plaintiff is able to serve a defendant *out of state* for the purpose of litigating the plaintiff's claims in the state. Accordingly, unless we conclude that its application would violate the Commerce Clause, ORS 12.150 tolled the running of the statute of limitation on plaintiff's claims after defendant moved to Washington.

B. *Commerce Clause Analysis*

The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce * * * among the several states." US Const, Art I, § 8, cl 3. "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' [also referred to as 'dormant'] aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 US 93, 98, 114 S Ct 1345, 128 L Ed 2d 13 (1994). "In its negative aspect, the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Fulton Corp. v. Faulkner*, 516 US 325, 330, 116 S Ct 848, 133 L Ed 2d 796 (1996) (internal quotation marks omitted).

"If a restriction on commerce is discriminatory, it is virtually *per se* invalid. * * * By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Oregon Waste Systems*, 511 US at 99 (quoting *Pike v. Bruce Church, Inc.*, 397 US 137, 142, 90 S Ct 844, 25 L Ed 2d 174 (1970)). In *Pike*, the United States Supreme Court described the latter test as follows:

"Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld

unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

397 US at 142 (citation omitted).

Here, as noted, plaintiff argues that "there is no evidence in the trial court record regarding any interference with, let alone burden on" interstate commerce. Defendant responds that defendant's move to Washington is, "in and of itself," interstate commerce and the tolling statute "burdens [defendant's] ability to move from state to state, which is an impermissible burden on interstate commerce, particularly when balanced against the ability to obtain jurisdiction over [defendant] under the Oregon long[-]arm statute."[12] The trial court agreed with defendant that application of ORS 12.150 in this case would violate the dormant Commerce Clause. For the reasons that follow, we conclude that the trial court erred.

*Bendix* is the governing Supreme Court case applying the dormant Commerce Clause in the context of a statute that tolls a limitation period. There, the plaintiff, a Delaware corporation with its principal place of business in Ohio, brought a breach-of-contract action in federal district

---

[12] We reject without extended discussion defendant's preliminary contentions that (1) plaintiff's arguments regarding "a claimed deficiency of proof" are not preserved and (2) those arguments are unreviewable because plaintiff did not provide a complete transcript of the evidence presented at trial. Those contentions are unavailing. The trial court decided precisely the issue that we are asked to consider here: whether ORS 12.150 unreasonably burdens the flow of interstate commerce by negatively affecting defendant's ability to move from state to state. Moreover, the parties stipulated to the fact necessary to review that legal ruling on appeal—that defendant moved from Oregon to Washington in November 2003 and lived there continuously up to and including the time of trial. (That fact is also established by the portion of the record that was submitted on appeal by agreement of the parties.)

Defendant makes a passing reference, in the summary-of-facts section of his brief, that he had "ma[de] reference during his testimony at trial regarding his employment records in Washington." However, defendant does not argue that such a reference would support a finding that defendant had moved to Washington for employment purposes, nor are those facts supported by evidence in the record.

court in Ohio against the defendant, an Illinois corporation, after a dispute arose over the defendant's delivery and installation of a boiler system at the plaintiff's Ohio facility. 486 US at 890. The defendant asserted that the plaintiff's claim was barred by the applicable statute of limitation; the plaintiff responded that the limitation period was tolled under an Ohio statute that suspended the running of the time for claims against entities that are not present in the state and have not designated an agent for service of process in Ohio. *Id.* After reiterating the principles announced in *Pike*,[13] the Court held that,

> "[a]lthough statute of limitations defenses are not a fundamental right, it is obvious that they are an integral part of the legal system and are relied upon to protect the liabilities of persons and corporations active in the commercial sphere. The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. *Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce.* The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain."

*Id.* at 893 (emphasis added; citations omitted).

Ultimately, the Court concluded that the Ohio provision violated the dormant Commerce Clause, reasoning that, under Ohio's statutory scheme, the defendant corporation—which had no corporate office in Ohio, was not registered to do business in Ohio, and had not appointed an agent for service of process in Ohio—would have had to

---

[13] The Court framed the analysis this way:

"Where the burden of a state regulation falls on interstate commerce, restricting its flow in a manner not applicable to local business and trade, there may be either a discrimination that renders the regulation invalid without more, or cause to weigh and assess the State's putative interests against the interstate restraints to determine if the burden imposed is an unreasonable one."

*Bendix*, 486 US at 891 (citation omitted).

"appoint a resident agent for service of process in Ohio and subject itself to the general jurisdiction of the Ohio courts" in order to gain the protection of the statute of limitation. *Id.* at 891-92.[14] Thus,

> "[t]he Ohio statutory scheme * * * forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity. Requiring a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction, is a significant burden."

*Id.* at 893 (citation omitted). Consequently, the Court concluded, "the Ohio statute imposes a greater burden on out-of-state companies than it does on Ohio companies, subjecting the activities of foreign and domestic corporations to inconsistent regulations." *Id.* at 894 (citation omitted). That burden, the Court concluded, "exceeds any local interest the State might advance," *id.* at 891, explaining that, because Ohio's long-arm statute would have permitted service on the out-of-state corporation throughout the limitation period, the state could not justify subjecting out-of-state entities to more onerous requirements based on its desire to protect its residents from corporations that become liable for acts done within the state but later leave the jurisdiction, *id.* at 893-94.

Applying those principles in the present case, it is clear that application of ORS 12.150 would, in *Bendix*'s terms, deny defendant, an out-of-state person, the benefit of an ordinary legal defense—*viz.*, application of a statute of limitation. *Bendix*, 486 US at 893. The threshold question to be resolved, however, is whether defendant is an out-of-state person *engaged in commerce* for purposes of the Commerce Clause. *Id.*; *see, e.g., Dan Clark Family Ltd. Partnership v. Miramontes*, 193 Cal App 4th 219, 231, 122 Cal Rptr 3d

---

[14] Under Ohio's statutory scheme, the statute of limitation tolled indefinitely against nonresident defendants unless those defendants appointed an agent for service of process in Ohio. *Bendix*, 486 US at 889.

517 (2011) ("Under *Bendix,* we first consider whether application of [the tolling statute] in this case 'denies ordinary legal defenses or like privileges to out-of-state persons . . . engaged in commerce.'" (Quoting *Bendix,* 486 US at 893)); *Tesar v. Hallas,* 738 F Supp 240, 241-42 (ND Ohio 1990) ("The threshold question is whether [the defendant] can be deemed, in [C]ommerce [C]lause terms, to be or to have been 'engaged in commerce.'"). Although that is a question of first impression in Oregon, courts in other jurisdictions have confronted similar issues.

In *Tesar,* for example, the federal district court considered an "as applied" challenge to a portion of the same Ohio tolling statute that was invalidated in *Bendix.* The court noted that, "[u]nlike the corporation in *Bendix,* [the defendant] is not alleged to have been engaged in a business causing him frequently to ship goods or to travel himself interstate," *Tesar,* 738 F Supp at 242; rather, the defendant had simply lived and worked in Ohio and then moved to Pennsylvania. However, because the defendant had moved to Pennsylvania *to begin a new job in that state,* the court concluded that interstate commerce was nonetheless sufficiently implicated, noting that the United States Supreme Court has held that "'the movement of persons falls within . . . the Commerce Clause,'" *id.* (quoting *Edwards v. California,* 314 US 160, 172, 62 S Ct 164, 86 L Ed 119 (1941)), and other courts have since "followed suit, holding that interstate commerce is affected when persons move between states *in the course of or in search for employment,*" *id.* (emphasis added; citations omitted). As the court explained:

> "The ability of businesses to recruit out-of-state personnel will be adversely affected if these potential employees must forfeit statute of limitations protection. Following *Bendix*'s holding that requiring foreign corporations to submit to the general jurisdiction of Ohio courts 'is an unreasonable burden on commerce,' it seems plainly 'unreasonable' for persons who have committed acts they know might be considered tortious to be held hostage until the applicable limitations period expires. Persons in that position, or businesses desirous of hiring them, would be burdened to a greater degree than *Bendix*'s foreign corporations, because Ohio has no procedure that permits a person who wishes

to move out-of-state to register with the state for service purposes."[15]

*Tesar*, 738 F Supp at 242; *see also Ward v. Graue*, 987 NE2d 760 (Ohio Ct App 2013) (affirming trial court grant of summary judgment to out-of-state defendant on ground that plaintiff's complaint for negligence involving a motor-vehicle accident had been filed after the expiration of the limitation period and the tolling provision in RC 2305.15 could not constitutionally be applied under the facts of the case, where defendant's affidavit established that defendant was traveling in Ohio in the course of employment at the time of the accident).

Similarly, in *Grover v. Bartsch*, 170 Ohio App 3d 188, 866 NE2d 547 (2006), the court held that the tolling provision could not constitutionally be applied to a nonresident defendant who was in Ohio on the date that a defamation action accrued, because "the application of the tolling provision to an out-of-state defendant—regardless of whether that defendant is an individual or a corporation—would cause the defendant to be perpetually subject to liability in Ohio," *id.* at 200, 866 NE2d at 557, and "create an impermissible burden on interstate commerce," *id.* at 201, 866 NE2d at 558. There again, however, it was significant that the defendant had travelled to Ohio for business purposes— promoting his upcoming book and making prepublication sales of that book—thus, he was engaged in interstate commerce. *Id.* at 201, 866 NE2d at 557-58.

*Abramson v. Brownstein*, 897 F2d 389 (9th Cir 1990), is also informative. The issue before the Ninth Circuit

---

[15] The court ultimately concluded that application of the tolling provision presented an unreasonable burden on interstate commerce when weighed against the state's interest in enacting the statute:

"[T]he prospective individual defendant has an even more draconian choice to make than that presented to the foreign corporation in *Bendix*. There being no mechanism by which he could register with the state for service purposes, [the defendant] would have had to choose between traveling out-of-state and enjoying the protection of the statute of limitations. He would have had to forego the position in Pittsburgh, or at least delay it substantially. On the other hand, again like in *Bendix*, [the plaintiff] would have had no trouble obtaining personal jurisdiction over [the defendant] via Ohio's long arm statute; O.R.C. § 2307.38.2(3) provides for jurisdiction over one alleged to have caused tortious injury in the state."

*Tesar*, 738 F Supp at 242-43 (footnote omitted).

was the constitutionality of a California tolling provision as applied to an action for breach of contract and other claims based on a sales transaction between two California residents—World Coin Partners and its general partner, Abramson—and a Massachusetts resident.[16] *Id.* at 390. The threshold question was satisfied in that case because the defendant "was engaged in interstate commerce when, as a Massachusetts resident, he entered into a sales transaction with Californians Abramson and World." *Id.* at 392 (footnote omitted).[17] Thus, in *Abramson*, the complaint was based on conduct that *itself* involved an activity of interstate commerce. *See also Dan Clark Family Ltd. Partnership*, 193 Cal App 4th at 231 (allegations of complaint demonstrated that the conduct underlying the plaintiff's claims was an interstate commercial transaction; thus, the defendants were "out-of-state persons" who were "engaged in commerce" under *Bendix*).

By contrast, in *Pratali v. Gates*, 4 Cal App 4th 632, 643, 5 Cal Rptr 2d 733 (1992), the court, considering the same statute that was at issue in *Abramson*, determined that there were "insufficient circumstances [implicating] interstate commerce to invoke the [C]ommerce [C]lause." The court observed that, although the loan at issue was made in Nevada and payable in California,

"there is no evidence respondent was in the business of making loans or was otherwise engaged in commerce. Although appellant would have us believe the loan proceeds were used in a commercial venture in another state, there is no competent evidence in the record to substantiate this assertion. * * * In any event, we question whether

---

[16] Under California case law, the tolling statute applied even though the defendant had never been physically present in California. *Abramson*, 897 F2d at 391.

[17] The court concluded that the statute imposed a significant burden on commerce because it "forces a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in California in perpetuity." *Abramson*, 897 F2d at 392 (citing *Bendix*, 486 US at 893). Given that the California long-arm statute would have permitted service on the defendant throughout the limitation period, the court further concluded that the state's interest in "alleviat[ing] any hardship that would result by compelling plaintiff to pursue defendant out of state" did not justify the burden created by the statute. *Id.* at 393 (internal quotation marks omitted).

a single amicable loan between California acquaintances while visiting in Las Vegas can rise to the level of interstate commerce within the meaning of the [C]ommerce [C]lause—however the proceeds are used. * * * Consequently, we reject appellant's attempt to characterize the transaction as interstate commerce and find, under the particular circumstances in this case, application of the tolling provision of section 351 does not violate the [C]ommerce [C]lause."

*Pratali*, 4 Cal App 4th at 643. "Thus," the court concluded, "while section 351's tolling provision may violate the [C]ommerce [C]lause as applied to a defendant engaged in interstate commerce, there is no showing the statute violates the [C]ommerce [C]lause *when applied to a noncommercial defendant not engaged in interstate commerce." Id.* (emphasis added; citations omitted).

In the present case, the record demonstrates only that defendant moved from Oregon to Washington in November 2003 and has been living in Washington continuously since then. There is no evidence that defendant relocated for employment purposes or moved to Washington in the course of any other business or commercial endeavor, nor does the underlying claim involve an interstate commercial transaction. Thus, in our view, here, as in *Pratali*, "there are insufficient circumstances [implicating] interstate commerce to invoke the [C]ommerce [C]lause." *Id.*

As noted, the trial court relied on other cases, in particular, *Bloomquist* and *Heritage Marketing*, to arrive at the contrary conclusion that, because application of the statute would "burden[] the defendant's ability to move from state to state," "that alone is a sufficient effect on interstate commerce to implicate the Commerce Clause." (Footnote omitted.)

In *Bloomquist*, the Missouri Supreme Court held unconstitutional a provision that tolled the statute of limitation—in that case, for medical malpractice—as to a Missouri resident who had moved out of the state during the limitation period. 244 SW3d at 144. The court rejected the argument that, because the defendant doctor's treatment of

the patient that gave rise to the medical malpractice claim occurred in Missouri while both were Missouri residents, it did *not* implicate interstate commerce. *Id.* at 142. The court held that, because the statute tolled the statute of limitation based solely on the out-of-state residence of the defendant doctor, it

> "thereby 'impose[es] a greater burden on out-of-state [defendants] than it does on [resident defendants].' *Bendix*, 486 US at 894 * * *. *As so applied, it plainly discourages and burdens his ability to move from state to state, which runs afoul of the Commerce Clause.*"

*Bloomquist*, 244 SW3d at 142-43 (emphasis added; brackets in *Bloomquist*). As support for that position, the court simply quoted, in a footnote and without elaboration, *Hoke v. United States*, 227 US 308, 320, 33 S Ct 281, 57 L Ed 523 (1913) ("'Commerce among the states * * * consists of intercourse and traffic between their citizens, and includes the transportation of persons and property. There may be, therefore, a movement of persons as well as of property; that is, a person may move or be moved in interstate commerce.'"). *Bloomquist*, 244 SW3d at 143 n 4 (quoting *Hoke*, 227 US at 320).

In *Heritage Marketing*, 160 Cal App 4th at 763, a California appellate court adopted the reasoning of *Bloomquist* to invalidate a similar California tolling statute. Although the trial court there had found that the "essence of this case is that defendants, residents of Texas, are wrongfully competing with plaintiff, a California company," *Heritage Marketing*, 160 Cal App 4th at 759 and, therefore, "this competition between companies in different states constitutes interstate commerce," *id.*, the appellate court apparently did not rely on that reasoning. Instead the court explained that it was persuaded by *Bloomquist* and held:

> "Section 351 penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. *The [C]ommerce [C]lause protects persons from such restraints on their movements across state lines.* (See *Service Mach. & Shipbuilding Corp. v. Edwards* (5th Cir. 1980) 617 F.2d 70, 73, affd. *sub nom. Edwards v. Service Machine & Shipping Corp.* (1980) 449

U.S. 913 [66 L. Ed. 2d 142, 101 S. Ct. 310], citing *Edwards v. California* (1941) 314 U.S. 160, 172 [86 L. Ed. 119, 62 S. Ct. 164].) *By creating disincentives to travel across state lines and imposing costs on those who wish to do so, the statute prevents or limits the exercise of the right to freedom of movement."*

*Heritage Marketing*, 160 Cal App 4th at 763-64 (emphasis added).

We are not persuaded by the reasoning of those cases. Although creating a "disincentive[]" to travel across state lines" may very well implicate the constitutional right to travel between states, *see State v. Berringer*, 234 Or App 665, 671-72, 229 P3d 615, *rev den*, 348 Or 669 (2010) (noting that, although the source of the constitutional right to travel between states has not been "identified definitively," it "undoubtedly exists"), we fail to see how moving across state lines—in and of itself—constitutes "engaging" in interstate commerce for purposes of invoking the dormant Commerce Clause. We disagree that *Hoke* and *Edwards*—the Supreme Court precedent on which *Bloomquist* and *Heritage Marketing* are ultimately predicated—compel the conclusion that a decision by an individual to move from one state to another, without evidence of any economic purpose or activity in doing so, is "engag[ing] in [interstate] commerce" under *Bendix*, 486 US at 893.

*Hoke* is easily distinguishable. In *Hoke*, the Court held that a congressional enactment making it a crime to transport or cause to be transported women and girls in interstate commerce for immoral purposes was within Congress's commerce power.[18] 227 US at 320-23. As the Court described it, "What the act condemns is transportation obtained or aided or transportation induced in interstate commerce, for the immoral purposes mentioned." *Id.* at 320. (The case involved allegations that the defendants had enticed women and girls to go from Louisiana to Texas for the purpose of engaging in prostitution.) Thus, *Hoke* stands for the unremarkable proposition that the activity of transporting others across state lines for purposes of commerce,

---

[18] Thus, although it is an obvious point, we note that, in *Hoke*, the Court had no cause to examine the *dormant* aspect of the Commerce Clause.

or aiding in that activity, is "interstate commerce" within Congress's power to regulate under the Commerce Clause.

In *Edwards*, the Court examined the constitutionality, under the dormant Commerce Clause, of a California statute prohibiting the transportation of indigent people into the state. 314 US at 160. Specifically, the statute provided, "'Every person, firm or corporation or officer or agent thereof that brings or assists in bringing into the State any indigent person who is not a resident of the state, knowing him to be an indigent person, is guilty of a misdemeanor.'" *Id.* at 171 (quoting Cal Welf & Inst Code § 2615 (1937)). The Court struck the provision as violative of the dormant Commerce Clause, reasoning that "the transportation of persons is 'commerce,'" *id.* at 172, and that the California law at issue raised an "unconstitutional barrier" to that commerce. *Id.* at 173. The Court explained that the dormant Commerce Clause protects "against attempts on the part of any single State to isolate itself from difficulties common to all of them by restraining the transportation of persons and property across its borders," *id.* at 173, and the statute in question was "squarely in conflict" with that principle, *id.* at 174. The Court held, "The burden upon interstate commerce is intended and immediate; it is the plain and sole function of the statute." *Id.*

The same is not true here. ORS 12.150 does not attempt to regulate the activity of transporting others across state lines in an attempt to isolate the state from problems common throughout the country, much less is it the statute's "plain and sole function." Moreover, as in *Hoke*, *Edwards* does not imply that moving oneself (as opposed to arranging for the transportation of others) across state lines is interstate commerce under the Commerce Clause.

Defendant also relies on *Service Mach. & Shipbuilding Corp.* (which was cited by the court in *Heritage Marketing*) to support his theory that moving from one state to another is, itself, engaging in interstate commerce. Although the Fifth Circuit bluntly stated in that case that, "the movement of persons falls within the protection of the [C]ommerce [C]lause," 617 F2d at 73 (citing *Edwards*, 314 US at 172), the precise issue before the court was the

constitutionality of a Louisiana parish ordinance that established a worker-registration system. The purpose of the ordinance was to "provide for the identification and registration of itinerant laborers seeking employment within [the parish]." *Id.* at 72. Thus, in that case, the statute directly affected the movement of people for purposes of commerce— that is, employment. We are reluctant to extrapolate from that narrow holding the principle that an individual engages in interstate commerce simply by moving himself or herself from one state to another, without any evidence of a similar nexus with commerce.

In sum, we conclude that defendant has failed to establish the threshold requirement that he is an out-of-state person "engaged in commerce" for purposes of invoking the dormant Commerce Clause; accordingly, ORS 12.150 does not, as applied here, violate the dormant Commerce Clause. The trial court erred in concluding otherwise.

## IV.  CONCLUSION

The trial court correctly determined that ORS 12.150 applies to plaintiff's claims; however, the court erred in concluding that its application violates the dormant Commerce Clause. There is no dispute between the parties that, if ORS 12.150 applies to toll the statute of limitation, then plaintiff's claims were timely. Accordingly, we reverse and remand with instructions to reinstate the jury's verdict in favor of plaintiff and enter judgment accordingly.[19]

Reversed and remanded for entry of judgment on jury verdict.

---

[19] We have previously decided that the trial court did not err in denying defendant's motion for leave to file an amended answer, as defendant contended in his cross-assignment of error. 271 Or App at 16.